## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NINGDE AMPEREX TECHNOLOGY LIMITED, | § § § | |
| Plaintiff, | § § | **Civil Action No.: 2:24-cv-728** |
| v. | § § | **JURY TRIAL DEMANDED** |
| ZHUHAI COSMX BATTERY CO., LTD., | § § | |
| Defendant. | § § | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ningde Amperex Technology Limited ("ATL" or "Plaintiff"), by and through its undersigned counsel, brings this Second Amended Complaint against Zhuhai CosMX Battery Co., Ltd. ("CosMX")[1] and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for infringement of U.S. Patent No. 11,575,148 (the "'148 Patent"), U.S. Patent No. 11,769,910 (the "'910 Patent"), U.S. Patent No. 11,799,131 (the "'131 Patent"), U.S. Patent No. 10,964,927 (the "'927 Patent"), U.S. Patent No. 11,923,498 (the "'498 Patent"), and U.S. Patent No. 12,015,118 (the "'118 Patent") (collectively, "the Asserted Patents") arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

### THE PARTIES

2.      ATL is a Chinese corporation with its principal place of business at No.1 Xingang Road, Zhangwan Town, Jiaocheng District, Ningde City, Fujian Province, People's Republic of

---

[1]  This amendment eliminates language in the First Amended Complaint that CosMX apparently understood as suggesting ATL sought pre-suit damages, which—for clarity—it did not.  The deletion of any legal or factual averments or allegations is without prejudice.  ATL reserves all rights to amend and supplement its pleadings—including to seek pre-suit damages—if new facts and/or evidence is discovered to support such allegations.

China.  ATL is a wholly owned subsidiary of Amperex Technology Limited, which is a wholly owned subsidiary of TDK Corporation, a multinational electronics manufacturer based in Japan.

3.      With origins dating back to 1999, ATL is the world's leading producer and innovator of lithium-ion batteries. ATL is known worldwide for its high-tech, high-volume prowess in developing and manufacturing high quality rechargeable lithium-ion batteries.

4.      ATL is now the world's leading lithium-ion battery manufacturer for smartphones and one of the major lithium-ion battery manufacturers for all consumer electronics. Over the past three years, ATL has manufactured over 1 billion lithium-ion batteries per year.

5.      ATL has leveraged its investments in research and development into technological innovations in all aspects of battery technology, including materials, processes, structures, charging technologies, and system design. These efforts have yielded thousands of patents in the United States and around the world.

6.      On information and belief, Zhuhai CosMX Battery Co., Ltd. (珠海冠宇电池股份有限公司) ("CosMX") is a Chinese corporation with its principal place of business at No. 209, Zhufeng Road, Doumen District, Zhuhai 519180, People's Republic of China.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because CosMX is not a resident in the United States and thus may be sued in any judicial district.

9.      This Court has personal jurisdiction over CosMX pursuant to the Constitution of the United States of America and/or the Texas Long Arm Statute because CosMX has committed acts of infringement in this District, directly and/or through intermediaries, by, among other things, making, using, offering to sell, selling, and/or importing lithium-ion battery products and/or related services that infringe the Asserted Patents (the "Accused Products"), as alleged herein.

10.     Upon information and belief, CosMX also regularly introduces the Accused Products into the stream of commerce through agents, customers, distributors, and intermediaries, knowing and intending that the Accused Products will ultimately be offered for sale and/or sold, or

will be incorporated into other products that will ultimately be offered for sale and/or sold, to residents of the United States, including residents of this District, or such products that will be imported into the United States including into this District.

11.     For example, according to CosMX, it is "one of worldwide major suppliers of consumer Li-ion batteries." *See* Exhibit A[2]. CosMX touts that it "has long served [the] world's well-known customers in the field of PCs, notebooks, tablets, smart phones, smart wearables, power tools, drones and other fields." *Id.* CosMX states that its "[b]attery products can be certified in different markets around the world according to customers' needs," and lists several marks indicating compliance with U.S. safety requirements, including a US UL mark. *Id.*

12.     For example, according to CosMX, it maintains a "Service Website" in San Francisco. Upon information and belief, customers in this District may message the San Francisco service office with their company contact information, product requirements, and project technical specifications. *See* Exhibit B[3].

13.     In its 2023 Annual Report, CosMX declared that in its "notebook product business, . . . the company has continuously consolidated its supply share in existing customers such as HP, Lenovo, Dell, Apple, Asus, Acer, Microsoft, Amazon and other notebook and tablet manufacturers." Exhibit C at 13 (machine translation of Chinese original). Further, CosMX declared with respect to its "mobile phone product business, . . . the company has . . . achieved mass production of Apple's mobile phone battery products for the first time during the reporting period." *Id.*

14.     In June 2022, ATL sued CosMX in this District for infringement of three U.S. patents. *See* No. 2:22-cv-00232-JRG (E.D. Tex.) (the "232 Action"). CosMX did not file a motion to dismiss in that action for lack of personal jurisdiction. CosMX filed a motion to transfer the case

---

[2]  About US – CosMX, http://www.cosmx.com/html/en/html/about/about/ (last accessed June 26, 2024).

[3]  Service Website – CosMX, http://www.cosmx.com/html/en/html/servicessupport/customersupport/network/ (last accessed June 26, 2024).

to the Northern District of California, and this Court denied CosMX's motion to transfer. *Id.* at Dkt. 90.

15.     Thus, upon information and belief, CosMX has knowingly and intentionally worked with various companies to design and supply lithium-ion batteries, including the Accused Products, specifically for use for each of its consumer electronics customers with the expectation that they would be incorporated into consumer electronics products intended for and sold to residents in the United States, including this District.

16.     Upon information and belief, as part of this design and supply process, CosMX meets with, and directly ships sample lithium-ion battery cells, including Accused Products, to certain of its brand customers, such as Dell (Round Rock, Texas) and HP (Springs, Texas), throughout Texas and this District. Upon further information and belief, CosMX also regularly sends battery cells to Texas Instruments in Dallas, Texas, for chemical and safety analysis and/or compatibility testing of certain Accused Products. Upon information and belief, but for these qualification activities that take place in the United States, CosMX LIBs could not be included in any of its domestic consumer electronics customers' (such as Dell and HP) products sold anywhere in the world.

17.     Upon information and belief, CosMX purposefully directed its activities at residents in this District by, for example, entering into agreements with Lenovo Inc. ("Lenovo"), to include CosMX lithium-ion batteries, including the Accused Products, within Lenovo's products. Upon information and belief, CosMX entered into these agreements with the knowledge that such products containing the Accused Products would be imported into and sold in the United States, including this District.

18.     For example, one of the Accused Products, identified as CosMX Cell No. CA386990G, was found in Acer Battery AP18E7M which was shipped to the United States in a Acer Swift X laptop. Another of the Accused Products, identified as CosMX Cell No. CA496485F-Q1, was found in Battery Part No. BN5D which was shipped to the United States in a Redmi Note 11. Another of the Accused Products, identified as CosMX Cell No. CA476588P-Q1, was found in Battery Part No. BN5P which was shipped to the United States in a Redmi Note 13. Upon

information and belief, additional laptop and phone batteries containing other Accused Products are sold and distributed in this District. Upon information and belief, CosMX intentionally entered into agreements with brand customers with the knowledge that the Accused Products, including for example CosMX Cell Nos. CA386990G, CA496485F-Q1, and CA476588P-Q1, would be sold to residents throughout the United States and including in this District through retailers such as Amazon.com, Best Buy, Walmart, and Newegg. *See, e.g.*, Exhibit D.

19.     The identification of exemplary CosMX Cell Nos. CA386990G, CA496485F-Q1, and CA476588P-Q1 are intended for illustration purposes and is not intended to limit the scope of ATL's infringement allegations. Upon information and belief, similar battery cells incorporating ATL's patented technology may be in laptop devices distributed in the United States by other OEMs. Upon additional information and belief, other CosMX battery cell model types incorporating ATL's patented technology may be found in other computing devices and may have different form factors, such as a lithium-ion secondary battery used in a smartphone, tablet, or other portable computing device. ATL anticipates that discovery in this action will be necessary to identify all Accused Products distributed in and to the United States and any remedy afforded should extend to all past, present, and future infringing products of CosMX regardless of model number or form factor. On information and belief, CosMX Cell Nos. CA386990G, CA496485F-Q1, and CA476588P-Q1 are representative of additional CosMX battery models with respect to the accused instrumentalities.

20.     Alternatively, as a foreign corporation, personal jurisdiction exists over CosMX at least by virtue of Federal Rule of Civil Procedure 4(k)(2) when taking into consideration all of CosMX's relevant contacts with the United States as a whole.

## ATL'S ASSERTED PATENTS

21.     On February 7, 2023, the United States Patent Office issued U.S. Patent No. 11,575,148, titled "Porous film and lithium-ion battery." The '148 Patent identifies Jianjian Yi, Xinzhi Zhang, Zengbin Wei, and Xinghua Tao as the inventors. A true and correct copy of the '148 Patent is attached hereto as Exhibit E.

22.    The '148 Patent is directed to a porous film in lithium-ion batteries commonly known as the separator.  The separator is a critical component for battery safety and performance. It physically separates the positive and negative electrodes while allowing current-conducting electrolyte to pass through.  The claimed invention of the '148 Patent shows a novel design of the separator with specific requirements for the particle size distribution of inorganic particles, as well as requirements regarding the relative disposition of pores formed by the binder and the inorganic particles.  To solve the problems in the prior art, the '148 Patent provides that the pores formed by the binder should at least comprise a part of the inorganic particles, the particle size distribution of the inorganic particles should fall within the ranges of $0.015\ \mu m \leq Dv10 \leq 3\ \mu m$, $0.2\ \mu m \leq Dv50 \leq 5\ \mu m$, and $1\ \mu m \leq Dv90 \leq 10\ \mu m$, and the ratio of Dv90 to Dv10 should be in the range of between 2 and 100.

23.    On September 26, 2023, the United States Patent Office issued U.S. Patent No. 11,769,910, titled "Electrolyte and electrochemical device." The '910 Patent identifies Kefei Wang, Qiao Zeng, Liangzhen Xiao, and Fei Wu as the inventors. A true and correct copy of the '910 Patent is attached hereto as Exhibit F.

24.    The '910 Patent is directed to an electrolyte and/or electrochemical device (*e.g.*, a lithium-ion battery) that can function in a high voltage environment due to a specific electrolyte composition. High-voltage batteries are desirable because they allow for increased energy density. It is known, however, that at high voltages, the oxidation activity of the positive electrode material increases which causes the positive electrode to decay which further induces deterioration of the battery material. This can reduce battery capacity, cycle life, and the overall efficiency of the battery. In the prior art, the purpose of improving capacity, cycle life, and efficiency is achieved by the addition of certain chemical additives into the electrolyte such that these additives form a protective film which prevents the electrode from decaying. In high voltage batteries however, these prior art films proved insufficient to withstand the harsher oxidation environment and were also susceptible to decay, thus causing the same reduction to battery capacity, cycle life, and battery efficiency. To solve the problems in the prior art, the '910 Patent provides a novel formulation comprising four additives (dinitrile, trinitrile, propyl propionate, and 1,3-propane sultone which,

when added in specific ratios in relation to each other based on the total weight of the electrolyte, was capable of withstanding deterioration even in stressful high-voltage conditions.

25.    On October 24, 2023, the United States Patent Office issued U.S. Patent No. 11,799,131, titled "Electrolyte and electrochemical device." The '131 Patent identifies Kefei Wang, Qiao Zeng, Liangzhen Xiao, and Fei Wu as the inventors. A true and correct copy of the '131 Patent is attached hereto as Exhibit G.

26.    The '131 Patent is also directed to an electrolyte and/or electrochemical device (*e.g.*, a lithium-ion battery) that can function in a high voltage environment due to a specific electrolyte composition. As described above regarding the '910 Patent, high voltage batteries are desirable due to the increased energy density that such batteries deliver compared to conventional batteries. However, the harsher environments (*e.g.*, higher oxidation activity) present in high voltage batteries present multiple challenges to preserving a high voltage battery's stability, cycle life, and capacity retention capabilities. While the prior art detailed the use of additives in electrolytes to form a protective film in conventional batteries, such films proved inadequate in the more stressful environments of high voltage batteries. To solve the problems in the prior art, the '131 Patent provides two improvements: (1) the use of additives (dinitriles, trinitriles, and propyl propionate) which, when added to the electrolyte in certain ratios compared to one another and based on the total weight of the electrolyte, would form a more stable protective film that did not decay in high voltage batteries; and (2) the use of single-sided and double-sided coatings on the electrode which, when the coated electrodes meet a certain electrode compaction density ratio, has a significant effect in preserving the cycle performance of the battery.

27.    On March 30, 2021, the United States Patent Office issued U.S. Patent No. 10,964,927, titled "Separator and electrochemical device." The '927 Patent identifies Kebing Guo, Dongyang Guo, Gengjin Kong, and Xinghua Tao as the inventors. A true and correct copy of the '927 Patent is attached hereto as Exhibit H.

28.    The '927 Patent is directed to the separator in an electrochemical device, such as a lithium-ion battery. The safety performance of electrochemical devices were historically underdeveloped. For example, when a battery is punctured by external forces, it may catch fire or

explode. The claimed invention of the '927 Patent improves on the safety performance of electrochemical devices by setting a range for the absolute plastic deformation rate of the porous substrate within the separator in a first direction. Specifically, the absolute plastic deformation rate is calculated according to an equation $(L2-L0)/L0 \times 100\%$, where L0 refers to a length of the porous substrate before stretching, and L2 refers to a length of the porous substrate after the porous substrate is stretched to breakage, docked along the fracture caused by the breakage, and flattened. By having a porous substrate whose absolute plastic deformation rate is between 40% and 1800%, the electrochemical device will exhibit improved safety performance and reliability.

29.     On March 5, 2024, the United States Patent Office issued U.S. Patent No. 11,923,498, titled "Lithium-ion battery having desirable safety performance." The '498 Patent identifies Tao Tao and Ming Liang Mo as the inventors. A true and correct copy of the '498 Patent is attached hereto as Exhibit I.

30.     The '498 Patent is directed to a lithium-ion battery comprising a positive and a negative electrode, where for each electrode, its lead (or tab) is welded to a current collector recess formed from the active material of the electrode, and the electrodes have insulating glue layers (or adhesive tape) at certain places to prevent the exposed recess from coming into contact with the active material. In prior art lithium-ion batteries, the recess is defined at one end of the positive plate or the negative plate along a length direction thereof, which causes thickness variation around the recess to be much larger than the thickness variation of the film afar from the recess. This arrangement is prone to peeling off around the corners, especially when the negative active material adopts an expansive substance, such as silicon. This leads to a high internal resistance of the lithium-ion battery and affects the capacity of the lithium-ion battery. In addition, since there is no insulating layer provided on the positive area corresponding to the positive recess or the negative recess, internal short circuit and lithium precipitation may potentially occur to the lithium-ion battery, which will inevitably affect the safety performance of the lithium-ion battery. To solve the problems of the prior art, the '498 Patent provides that the tabs are welded in recesses which increases the space for the active material layer and allows for the tab to be welded near the middle of the electrode, thereby increasing energy density and reducing resistance. The '498 Patent further

provides for insulating glue layers (or adhesive tape) on the portion of the other electrode opposite of the tab, thereby reducing thickness and increasing safety.

31.     On June 18, 2024, the United States Patent Office issued U.S. Patent No. 12,015,118, titled "Electrode electrochemical device and electronic device." The '118 Patent identifies Chaowang Lin, Fan Yang, Yisong Su, Huawei Zhong, Changming Qu, and Xiaozhen Zhang as the inventors. A true and correct copy of the '118 Patent is attached hereto as Exhibit J.

32.     The '118 Patent is directed to an electrode in an electrochemical device, such as a lithium-ion battery.   The safety performance of electrochemical devices was historically underdeveloped. For example, when a battery is punctured by external forces, it may catch fire or explode. The claimed invention of the '118 Patent improves on the safety performance of electrochemical devices by utilizing an electrode with two layers of materials surrounding a current collector, where a particle size of 90% accumulative volume of the material in one layer is below a certain threshold, and a compaction density for both layers is above a certain threshold. Specifically, the particle size of 90% accumulative volume of the material in the first layer, which is arranged between the current collector and the second layer, is less than 40 µm.  Further, the total compaction density of the first layer and the second layer is greater than 3.2 grams per cubic centimeter.   By having the compaction density of both layers be above 3.2 grams per cubic centimeter, the electrochemical device will exhibit improved safety performance and reliability.

## COUNT I

### Infringement of the '148 Patent

33.     ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

34.     ATL is the assignee of the '148 Patent. ATL has all substantial rights to enforce the '148 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

35.     The '148 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

36.     In violation of 35 U.S.C. § 271(a), CosMX has infringed and continues to infringe at least claims 1, 3, 4, 5, 6, 8, 10, 12, 13, 14, 15, 17, and 19 of the '148 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial district, the Accused Products.[4]

37.     Upon information and belief, CosMX or its agent manufactures the Accused Products outside of the United States but delivers the Accused Products to its customers, distributors, and/or subsidiaries in the United States. Upon information and belief, to the extent that CosMX delivers the Accused Products outside of the United States, CosMX does so with the intent and knowledge that the Accused Products are destined for the United States or are designed for products to be sold in the United States. CosMX has infringed literally and/or under the doctrine of equivalents.

38.     CosMX has known of the '148 Patent since the filing of the Complaint in this matter.

39.     Upon information and belief, under 35 U.S.C. § 271(b), CosMX induces customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claims 1, 3, 4, 5, 6, 8, 10, 12, 13, 14, 15, 17, and 19 of the '148 Patent. Upon information and belief, CosMX with specific intent actively aids and abets the infringement of the '148 Patent by customers, distributors, and/or importers by, inter alia, entering into supplier agreements to include the Accused Products in CosMX's customers' products to be sold in the United States, promoting CosMX's customers' products sold in the United States, advertising these agreements to promote CosMX's initial public offering, creating established distribution channels for the Accused Products into the United States, manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, Underwriter Laboratories' standards), and/or establishing offices within the United States to provide technical and sales support.

---

[4] ATL incorporates by reference herein its Patent Rule 3-1 disclosure of asserted claims and infringement contentions served on CosMX on January 7, 2025, including Exhibit C thereto, which identifies specifically where each element of each asserted claim of the '148 Patent is found within each Accused Instrumentality.

40.     Upon information and belief, CosMX has knowledge that it is directly and/or indirectly infringing at least claims 1, 3, 4, 5, 6, 8, 10, 12, 13, 14, 15, 17, and 19 of the '148 Patent and has not ceased its infringing conduct. CosMX's infringing conduct has and continues to be willful and deliberate misconduct beyond typical infringement such that ATL is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

41.     A representative claim chart showing CosMX's infringement of the '148 Patent is attached hereto as Exhibit K.

42.     CosMX is not licensed or otherwise authorized to practice the claims of the '148 Patent.

43.     By reason of CosMX's infringement, ATL has suffered and continues to suffer substantial damages.

44.     ATL is entitled to recover the damages sustained as a result of CosMX's wrongful acts in an amount subject to proof at trial.

45.     CosMX's infringement of the '148 Patent is exceptional and entitles ATL to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

### Infringement of the '910 Patent

46.     ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

47.     ATL is the assignee of the '910 Patent. ATL has all substantial rights to enforce the '910 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

48.     The '910 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

49.     In violation of 35 U.S.C. § 271(a), CosMX has infringed and continues to infringe at least claims 1, 2, 3, 4, 5, 6, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26 of the

'910 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial district, the Accused Products.[5]

50.    Upon information and belief, CosMX or its agent manufactures the Accused Products outside of the United States but delivers the Accused Products to its customers, distributors, and/or subsidiaries in the United States. Upon information and belief, to the extent that CosMX delivers the Accused Products outside of the United States, CosMX does so with the intent and knowledge that the Accused Products are destined for the United States or are designed for products to be sold in the United States. CosMX has infringed literally and/or under the doctrine of equivalents.

51.    CosMX has known of the '910 Patent since the filing of the Complaint in this matter.

52.    Upon information and belief, under 35 U.S.C. § 271(b), CosMX induces customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claims 1, 2, 3, 4, 5, 6, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26 of the '910 Patent. Upon information and belief, CosMX with specific intent actively aids and abets the infringement of the '910 Patent by customers, distributors, and/or importers by, inter alia, entering into supplier agreements to include the Accused Products in CosMX's customers' products to be sold in the United States, promoting CosMX's customers' products sold in the United States, advertising these agreements to promote CosMX's initial public offering, creating established distribution channels for the Accused Products into the United States, manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, Underwriter Laboratories' standards), and/or establishing offices within the United States to provide technical and sales support.

53.    Upon information and belief, CosMX has knowledge that it is directly and/or indirectly infringing at least claims 1, 2, 3, 4, 5, 6, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26 of the '910 Patent and has not ceased its infringing conduct. CosMX's infringing conduct

---

[5]  ATL incorporates by reference herein Exhibit B of its Patent Rule 3-1 disclosure of asserted claims and infringement contentions served on CosMX on January 7, 2025, which identifies specifically where each element of each asserted claim of the '910 Patent is found within each Accused Instrumentality.

has and continues to be willful and deliberate misconduct beyond typical infringement such that ATL is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

54.     A representative claim chart showing CosMX's infringement of the '910 Patent is attached hereto as Exhibit L.

55.     CosMX is not licensed or otherwise authorized to practice the claims of the '910 Patent.

56.     By reason of CosMX's infringement, ATL has suffered and continues to suffer substantial damages.

57.     ATL is entitled to recover the damages sustained as a result of CosMX's wrongful acts in an amount subject to proof at trial.

58.     CosMX's infringement of the '910 Patent is exceptional and entitles ATL to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III

## Infringement of the '131 Patent

59.     ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

60.     ATL is the assignee of the '131 Patent. ATL has all substantial rights to enforce the '131 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

61.     The '131 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

62.     In violation of 35 U.S.C. § 271(a), CosMX has infringed and continues to infringe at least claims 1, 2, 3, 4, 5, 6, 7, 12, 14, 15, 16, and 17 of the '131 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial district, the Accused Products.[6]

---

[6]  ATL incorporates by reference herein Exhibit A of its Patent Rule 3-1 disclosure of asserted

63.     Upon information and belief, CosMX or its agent manufactures the Accused Products outside of the United States but delivers the Accused Products to its customers, distributors, and/or subsidiaries in the United States. Upon information and belief, to the extent that CosMX delivers the Accused Products outside of the United States, CosMX does so with the intent and knowledge that the Accused Products are destined for the United States or are designed for products to be sold in the United States. CosMX has infringed literally and/or under the doctrine of equivalents.

64.     CosMX has known of the '131 Patent since the filing of the Complaint in this matter.

65.     Upon information and belief, under 35 U.S.C. § 271(b), CosMX induces customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claims 1, 2, 3, 4, 5, 6, 7, 12, 14, 15, 16, and 17 of the '131 Patent. Upon information and belief, CosMX with specific intent actively aids and abets the infringement of the '131 Patent by customers, distributors, and/or importers by, inter alia, entering into supplier agreements to include the Accused Products in CosMX's customers' products to be sold in the United States, promoting CosMX's customers' products sold in the United States, advertising these agreements to promote CosMX's initial public offering, creating established distribution channels for the Accused Products into the United States, manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, Underwriter Laboratories' standards), and/or establishing offices within the United States to provide technical and sales support.

66.     Upon information and belief, CosMX has knowledge that it is directly and/or indirectly infringing at least claims 1, 2, 3, 4, 5, 6, 7, 12, 14, 15, 16, and 17 of the '131 Patent and has not ceased its infringing conduct. CosMX's infringing conduct has and continues to be willful and deliberate misconduct beyond typical infringement such that ATL is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

---

claims and infringement contentions served on CosMX on January 7, 2025, which identifies specifically where each element of each asserted claim of the '131 Patent is found within each Accused Instrumentality.

67.    A representative claim chart showing CosMX's infringement of the '131 Patent is attached hereto as Exhibit M.

68.    CosMX is not licensed or otherwise authorized to practice the claims of the '131 Patent.

69.    By reason of CosMX's infringement, ATL has suffered and continues to suffer substantial damages.

70.    ATL is entitled to recover the damages sustained as a result of CosMX's wrongful acts in an amount subject to proof at trial.

71.    CosMX's infringement of the '131 Patent is exceptional and entitles ATL to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV

### Infringement of the '927 Patent

72.    ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

73.    ATL is the assignee of the '927 Patent. ATL has all substantial rights to enforce the '927 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

74.    The '927 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

75.    In violation of 35 U.S.C. § 271(a), CosMX has infringed and continues to infringe at least claims 1, 2, 3, 4, 6, 7, 8, 9, and 10 of the '927 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial district, the Accused Products.[7]

---

[7]  ATL incorporates by reference herein Exhibit F of its Patent Rule 3-1 disclosure of asserted claims and infringement contentions served on CosMX on January 7, 2025, which identifies specifically where each element of each asserted claim of the '927 Patent is found within each Accused Instrumentality.

76.    Upon information and belief, CosMX or its agent manufactures the Accused Products outside of the United States but delivers the Accused Products to its customers, distributors, and/or subsidiaries in the United States. Upon information and belief, to the extent that CosMX delivers the Accused Products outside of the United States, CosMX does so with the intent and knowledge that the Accused Products are destined for the United States or are designed for products to be sold in the United States. CosMX has infringed literally and/or under the doctrine of equivalents.

77.    CosMX has known of the '927 Patent since the filing of the Complaint in this matter.

78.    Upon information and belief, under 35 U.S.C. § 271(b), CosMX induces customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claims 1, 2, 3, 4, 6, 7, 8, 9, and 10 of the '927 Patent. Upon information and belief, CosMX with specific intent actively aids and abets the infringement of the '927 Patent by customers, distributors, and/or importers by, inter alia, entering into supplier agreements to include the Accused Products in CosMX's customers' products to be sold in the United States, promoting CosMX's customers' products sold in the United States, advertising these agreements to promote CosMX's initial public offering, creating established distribution channels for the Accused Products into the United States, manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, Underwriter Laboratories' standards), and/or establishing offices within the United States to provide technical and sales support.

79.    Upon information and belief, CosMX has knowledge that it is directly and/or indirectly infringing at least claims 1, 2, 3, 4, 6, 7, 8, 9, and 10 of the '927 Patent and has not ceased its infringing conduct. CosMX's infringing conduct has and continues to be willful and deliberate misconduct beyond typical infringement such that ATL is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

80.    A representative claim chart showing CosMX's infringement of the '927 Patent is attached hereto as Exhibit N.

81.    CosMX is not licensed or otherwise authorized to practice the claims of the '927 Patent.

82.    By reason of CosMX's infringement, ATL has suffered and continues to suffer substantial damages.

83.    ATL is entitled to recover the damages sustained as a result of CosMX's wrongful acts in an amount subject to proof at trial.

84.    CosMX's infringement of the '927 Patent is exceptional and entitles ATL to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V

### Infringement of the '498 Patent

85.    ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

86.    ATL is the assignee of the '498 Patent. ATL has all substantial rights to enforce the '498 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

87.    The '498 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

88.    In violation of 35 U.S.C. § 271(a), CosMX has infringed and continues to infringe at least claims 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 of the '498 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial district, the Accused Products.[8]

89.    Upon information and belief, CosMX or its agent manufactures the Accused Products outside of the United States but delivers the Accused Products to its customers, distributors, and/or subsidiaries in the United States. Upon information and belief, to the extent that CosMX delivers the Accused Products outside of the United States, CosMX does so with the intent and knowledge that the Accused Products are destined for the United States or are designed for

---

[8]  ATL incorporates by reference herein Exhibit D of its Patent Rule 3-1 disclosure of asserted claims and infringement contentions served on CosMX on January 7, 2025, which identifies specifically where each element of each asserted claim of the '498 Patent is found within each Accused Instrumentality.

products to be sold in the United States. CosMX has infringed literally and/or under the doctrine of equivalents.

90.     CosMX has known of the '498 Patent since the filing of the Complaint in this matter.

91.     Upon information and belief, under 35 U.S.C. § 271(b), CosMX induces customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claims 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 of the '498 Patent. Upon information and belief, CosMX with specific intent actively aids and abets the infringement of the '498 Patent by customers, distributors, and/or importers by, inter alia, entering into supplier agreements to include the Accused Products in CosMX's customers' products to be sold in the United States, promoting CosMX's customers' products sold in the United States, advertising these agreements to promote CosMX's initial public offering, creating established distribution channels for the Accused Products into the United States, manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, Underwriter Laboratories' standards), and/or establishing offices within the United States to provide technical and sales support.

92.     Upon information and belief, CosMX has knowledge that it is directly and/or indirectly infringing at least claims 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 of the '498 Patent and has not ceased its infringing conduct. CosMX's infringing conduct has and continues to be willful and deliberate misconduct beyond typical infringement such that ATL is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

93.     A representative claim chart showing CosMX's infringement of the '498 Patent is attached hereto as Exhibit O.

94.     CosMX is not licensed or otherwise authorized to practice the claims of the '498 Patent.

95.     By reason of CosMX's infringement, ATL has suffered and continues to suffer substantial damages.

96.     ATL is entitled to recover the damages sustained as a result of CosMX's wrongful acts in an amount subject to proof at trial.

97.     CosMX's infringement of the '498 Patent is exceptional and entitles ATL to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI

## Infringement of the '118 Patent

98.     ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

99.     ATL is the assignee of the '118 Patent. ATL has all substantial rights to enforce the '118 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

100.    The '118 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

101.    In violation of 35 U.S.C. § 271(a), CosMX has infringed and continues to infringe at least claims 1, 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, 19, and 20 of the '118 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial district, the Accused Products.[9]

102.    Upon information and belief, CosMX or its agent manufactures the Accused Products outside of the United States but delivers the Accused Products to its customers, distributors, and/or subsidiaries in the United States. Upon information and belief, to the extent that CosMX delivers the Accused Products outside of the United States, CosMX does so with the intent and knowledge that the Accused Products are destined for the United States or are designed for products to be sold in the United States. CosMX has infringed literally and/or under the doctrine of equivalents.

103.    CosMX has known of the '118 Patent since the filing of the Complaint in this matter.

_____

[9]  ATL incorporates by reference herein Exhibit E of its Patent Rule 3-1 disclosure of asserted claims and infringement contentions served on CosMX on January 7, 2025, which identifies specifically where each element of each asserted claim of the '118 Patent is found within each Accused Instrumentality.

104.    Upon information and belief, under 35 U.S.C. § 271(b), CosMX induces customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claims 1, 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, 19, and 20 of the '118 Patent. Upon information and belief, CosMX with specific intent actively aids and abets the infringement of the '118 Patent by customers, distributors, and/or importers by, inter alia, entering into supplier agreements to include the Accused Products in CosMX's customers' products to be sold in the United States, promoting CosMX's customers' products sold in the United States, advertising these agreements to promote CosMX's initial public offering, creating established distribution channels for the Accused Products into the United States, manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, Underwriter Laboratories' standards), and/or establishing offices within the United States to provide technical and sales support.

105.    Upon information and belief, CosMX has knowledge that it is directly and/or indirectly infringing at least claims 1, 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, 19, and 20 of the '118 Patent and has not ceased its infringing conduct. CosMX's infringing conduct has and continues to be willful and deliberate misconduct beyond typical infringement such that ATL is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

106.    A representative claim chart showing CosMX's infringement of the '118 Patent is attached hereto as Exhibit P.

107.    CosMX is not licensed or otherwise authorized to practice the claims of the '118 Patent.

108.    By reason of CosMX's infringement, ATL has suffered and continues to suffer substantial damages.

109.    ATL is entitled to recover the damages sustained as a result of CosMX's wrongful acts in an amount subject to proof at trial.

110.    CosMX's infringement of the '118 Patent is exceptional and entitles ATL to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VII

### Correction of Inventorship under 35 U.S.C. § 256
### ('910 Patent)

111.    ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

112.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder of inventors.

113.    As the assignee of the '910 Patent, ATL has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

114.    The '910 Patent incorrectly identifies Qiao Zeng as a named inventor. Qiao Zeng did not conceive of the inventions claimed in the '910 Patent.

115.    Qiao Zeng, along with ATL and the other named inventors of the '910 Patent, agree that she should be removed as a named inventor of the '910 Patent.

116.    The inventorship of the '910 Patent should be corrected under 35 U.S.C. § 256 to remove Qiao Zeng as a named inventor.

## COUNT VIII

### Correction of Inventorship under 35 U.S.C. § 256
### ('131 Patent)

117.    ATL re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

118.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder of inventors.

119.    As the assignee of the '131 Patent, ATL has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

120.    The '131 Patent incorrectly identifies Qiao Zeng as a named inventor. Qiao Zeng did not conceive of the inventions claimed in the '131 Patent.

121.    Qiao Zeng, along with ATL and the other named inventors of the '131 Patent, agree that she should be removed as a named inventor of the '131 Patent.

122.    The inventorship of the '131 Patent should be corrected under 35 U.S.C. § 256 to remove Qiao Zeng as a named inventor.

## PRAYER FOR RELIEF

WHEREFORE, ATL respectfully prays for the following relief:

(a)    A judgment that CosMX has directly and/or indirectly infringed the Asserted Patents;

(b)    A judgment that CosMX has willfully infringed the Asserted Patents;

(c)    A permanent injunction enjoining CosMX, together with its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and those persons in active concert or participation with them, from directly and/or indirectly infringing the Asserted Patents;

(d)    An award of damages adequate to compensate ATL for CosMX's infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

(e)    An accounting and/or an ongoing royalty as necessary to determine the amount of and award ATL any post-verdict royalties and/or lost profits;

(f)    An increase in the damages award up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

(g)    That CosMX be ordered to pay to ATL pre-judgment and post-judgment interest;

(h)    A determination that this action is exceptional pursuant to 35 U.S.C. § 285, and an award to ATL of its attorneys' fees, costs, and expenses incurred in connection with this action;

(i)    An order directing the United States Patent and Trademark Office to correct the inventorship of the '910 Patent and '131 Patent by removing Qiao Zeng as an inventor of both patents; and

(j)    Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues so triable.

DATED: January 28, 2024            Respectfully submitted,

By: */s/ Michael D. Powell*

Michael D. Powell
California Bar No. 202850
QUINN EMANUEL URQUHART & SULLIVAN LLP
mikepowell@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Lance Yang
California Bar No. 260705
QUINN EMANUEL URQUHART & SULLIVAN LLP
lanceyang@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

G. Blake Thompson
State Bar No. 24042033
Blake@TheMannFirm.com
MANN | TINDEL | THOMPSON
112 E. Line Street, Suite 304
Tyler, Texas 75702
(903) 657-8540
(903) 657-6003 (fax)

*Attorneys for Plaintiff Ningde Amperex Technology Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 28, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court by using the Court's CM/ECF, which will send notification of such filing to all registered participants.

Michael C. Hendershot
Jones Day
1755 Embarcadero Rd.
Palo Alto, CA 94303
mhendershot@jonesday.com
+1 650.739.3940

*/s/ Michael D. Powell*
Michael D. Powell