# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NINGDE AMPEREX TECHNOLOGY LIMITED,<br><br>*Plaintiff*,<br><br>v.<br><br>ZHUHAI COSMX BATTERY CO., LTD.,<br><br>*Defendant.* | Case No. 2:24-CV-00728-JRG<br><br>**Jury Trial Demanded** |

## PLAINTIFF NINGDE AMPEREX TECHNOLOGY LIMITED'S REPLY CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | Weight Percentile of Dinitrile/Trinitrile Terms ('910/'131, Various Claims) | 1 |
| II. | Single-Sided Or Double-sided Coating Present Term ('910, Cl. 14) | 2 |
| III. | "Wherein the electrode comprises an anode" ('910, Cl. 15) | 4 |
| IV. | "The pores at least comprises a part of the inorganic particles" ('148, Cls. 1, 10) | 5 |
| V. | "First Layer"/ "Second Layer" Terms ('118, Various Claims) | 8 |

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Cadence Pharm. v. Exela Pharm.*,
　780 F.3d 1364 (Fed. Cir. 2015)......................................................................................9, 10

*Canatex Completion Sols., Inc. v. Wellmatics, LLC*,
　159 F.4th 39 (Fed. Cir. 2025) ...............................................................................................5

*Dasso Int'l, Inc. v. MOSO N. Am., Inc.*,
　No. 1:17-CV-01574-RGA, 2019 WL 2135855 (D. Del. May 16, 2019)...............................6, 7

*Epass Tech. v. 3Com*,
　343 F.3d 1364 (Fed. Cir. 2003).............................................................................................9

*Hoffer v. Microsoft Corp.*,
　405 F.3d 1326 (Fed. Cir. 2005).............................................................................................4

*Legacy Separators LLC v. Halliburton Energy Services Inc*,
　2016 WL 3017140 (S.D. Tex. 2016) .....................................................................................7

*Poly-America v. API Indus's*,
　839 F.3d 1131 (Fed. Cir. 2016)......................................................................................9, 10

**Statutes**

35 U.S.C. §112(d) ..........................................................................................................................2

## TABLE OF EXHIBITS

| Exhibit A | U.S. Patent No. 11,769,910, referred to herein as "'910" or "'910 patent" |
|---|---|
| Exhibit B | U.S. Patent No. 11,799,131, referred to herein as "'131" or "'131 patent" |
| Exhibit C | U.S. Patent No. 11,575,148, referred to herein as "'148" or "'148 patent" |
| Exhibit D | U.S. Patent No. 12,015,118, referred to herein as "'118" or "'118 patent" |
| Exhibit E | Declaration of Dr. Quinn Horn In Support Of ATL's Opening Brief |
| Exhibit F | Excerpt from Petition from *Zhuhai CosMX Co. Ltd. v. Ningde Amperex Technology Ltd.*, IPR2025-00405, Paper 1 (PTAB, Jan. 3, 2025) |
| Exhibit G | Excerpt from Petition from *Zhuhai CosMX Battery Co. Ltd. v. Ningde Amperex Technology Ltd.*, IPR2025-00432, Paper 2 (PTAB, Jan. 10, 2025) |
| Exhibit H | Excerpt from Patent Owner's Discretionary Denial Briefing from *Zhuhai CosMX Battery Co. Ltd. v. Ningde Amperex Technology Ltd.*, IPR2025-00524, Paper 7 (PTAB, Jul. 07, 2025) |
| Exhibit I | Excerpt from Patent Owner Preliminary Response from *Zhuhai CosMX Battery Co. Ltd. v. Ningde Amperex Technology Ltd.*, IPR2025-00524, Paper 9 (PTAB, Aug. 05, 2025) |
| Exhibit J | Excerpt from U.S. Patent No. 10,693,181 |
| Exhibit K | Excerpt from U.S. Patent No. 11,322,774 |
| Exhibit L | Excerpt from David Blockley, THE NEW PENGUIN DICTIONARY OF CIVIL ENGINEERING (Penguin Books, 2005) |

I. **Weight Percentile of Dinitrile/Trinitrile Terms ('910/'131, Various Claims)**

CosMX's proposed construction seeks to change the words of the claim from "of the [dinitrile/trinitrile] compound(s)" to "of **all** [dinitrile/trinitrile] compound(s) in the electrolyte." CosMX proposal fails because it can identify no evidence of any clear disavowal of claim scope. CosMX further attempts to mischaracterizes the parties' agreement on the electrolyte term far beyond what was intended. ATL agreed the listed groups are closed with respect to the terms "the dinitrile" and "the trinitrile"—not with respect to the term "electrolyte." The "electrolyte" of claim 1 of the '910, for example, can have many different dinitriles ("a" means "one or more"); but the claim specifies that, in calculating the value of "X" (*i.e.,* the weight percentage of the listed dinitriles) or "Y" (*i.e.,* the weight percentage of the listed trinitriles), only the combined weight of those dinitriles/trinitriles listed in the claim group are to be counted. This means that the numerator sums up the weight of only the dinitriles/trinitriles in the listed group whereas the denominator sums up the weight of everything in the electrolyte, which may include dinitriles/trinitriles not identified in the group. The following demonstrative illustrates this plain language of claim 1:

| Relevant Portions of '910 Patent Claim 1 (As Issued) | Relevant Portions of '910 Patent Claim 1 (As Restated) |
|---|---|
| An electrolyte, comprising a dinitrile compound, | The electrolyte contains **one or more** dinitrile compounds; |
| a trinitrile compound… | The electrolyte contains **one or more** trinitrile compounds |
| …a weight percentage of the dinitrile compound is X, a weight percentage of the trinitrile compound is Y… | The parties agree[1], absent more claim language, the X weight percentage would be calculated by summing up the weights of **the** dinitriles in the electrolyte<br><br>The parties agree, absent more claim |

---

[1] Because claim 1 of the '131 patent is silent on the identity of the dinitriles, the parties seem to agree that the disputed term should mean "all dinitriles in the electrolyte." Dkt. 130 at p. 5.

| | |
|---|---|
| | language, the Y weight percentage would be calculated by summing up the weights of **the** trinitriles in the electrolyte |
| …wherein the dinitrile compound is one or more compounds selected from the group consisting of butanedinitrile, adiponitrile, ethylene glycol bis(2-cyanoethyl) ether, and 1,4-dicyano-2-butene; | This additional claim language refers back to "**the** dinitrile compound" used to calculate X and specifies that only those dinitriles from the group consisting of butanedinitrile, adiponitrile, ethylene glycol bis(2-cyanoethyl) ether, and 1,4-dicyano-2-butene, are to be included in the numerator of the ratio; |
| and the trinitrile compound is one or more compounds selected from the group consisting of 1,3,6-hexanetricarbonitrile , 1,2,6-hexanetricarbonitrile and 1,2,3-tris(2-cyanoethoxy)propane; | This additional claim language refers back to "**the** trinitrile compound" used to calculate Y and specifies that only those trinitriles from the group consisting of 1,3,6-hexanetricarbonitrile , 1,2,6-hexanetricarbonitrile and 1,2,3-tris(2-cyanoethoxy)propane, are to be included in the numerator of the ratio; |

The above reading is evident from the specification's table that considers other trinitriles that are not part of the listed groups. *See, e.g.,* '910 Patent at Table 1-2 (considering $B_3$ which is PTCN (1,3,5-Pentanetricarbonitrile), a trinitrile that is not listed in claim 1). As such, CosMX's narrowing construction should be rejected and this term should be given its plain and ordinary meaning.

II.     **Single-Sided Or Double-sided Coating Present Term ('910, Cl. 14)**

Claim 14 is not indefinite and should be given its plain and ordinary meaning, with the judicial addition of the word "is" in the term (*i.e.,* "only a single-sided coating or double-sided coating **is** present on the same electrode).[2] CosMX's proposed construction interprets claims 13 and 14 in a vacuum, without any consideration to the rest of the '910 Patent. 35 U.S.C. §112(d) is

---

[2] CosMX has represented it does not oppose ATL's request for correction. Also, CosMX has not proposed a construction for any term of claims 12 or 13 and has therefore waived any argument related to terms in those claims.

2

clear: "A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." Thus, when considering claim 14, one must consider all references contained within claim 13, which necessarily includes a consideration of claim 12.

As ATL's expert, Dr. Horn, explains: the electrochemical device of claim 12 comprises at least two (*i.e.,* at least one cathode and at least one anode) electrodes. Dkt. 118-5 (Decl. of Q. Horn) at ¶ 39 (wound-type cells generally have at least two electrodes); ¶ 42 (laminated cells can have many electrodes). Consistent with this view, the device of claim 12 could therefore have any number of additional electrodes. Claim 13 depends from and limits claim 12 by focusing solely on the embodiment of a battery cell in which at least one cathode[3] (regardless of how many other electrodes actually exist in the cell) has a single-sided coating on one portion of the electrode and a double-sided coating on another portion of either the same or another electrode. Claim 14 limits this embodiment even further, by specifying that the single-sided and double-sided coating have to be present "on the same electrode" *or* that the same electrode has "*only* a single-sided coating or a double-sided coating." This limitation further restricts the scope of claim 14 such that it excludes a traditional wound-type battery which has only one cathode and one anode.[4]

Absent expert testimony of its own to inform the court how a person of ordinary skill in the art would interpret this term, CosMX instead impermissibly uses attorney argument to fill in the technical gaps in its proposed construction. CosMX alleges that claim 14 does not define "a second electrode" but this argument simply ignores that claim 14 is directed to coatings that could

---

[3] CosMX misreads ATL's briefing to suggest ATL believes claim 13 only covers one cathode. As ATL made clear in its opening brief, "the term 'a cathode' in Claim 13 means 'one or more' cathodes, or equivalently, 'at least one' cathode." Dkt. 118 (ATL's Opening Brief) at p. 9.

[4] As noted in ATL's Opening Brief, wound-type batteries may also have more than one cathode and one anode. Dkt. 118, at p. 10 and n. 3.

3

be on any number of cathodes in a device covered by Claim 13 (and claim 12 by reference). Dkt. 130 (CosMX's Responsive Briefing) at pp. 9-10. CosMX's argument runs contrary to both the '910 patent's specification, which teaches the existence of laminated batteries having multiple electrodes with various configurations of coatings, as well as Dr. Horn's explanation to how a POSITA would interpret such teachings. Dkt. 118-5 at ¶ 45. For ease of reference, a demonstrative showing the proper reading of this term is attached as Appendix A to this brief.

### III. "Wherein the electrode comprises an anode" ('910, Cl. 15)

The claim language itself, supported by the specific density ranges set forth in the specification, make it obvious that claim 15 should be judicially corrected to refer back to claim 12, not claim 13. Because CosMX elected not to provide rebuttal expert testimony, it cannot support its allegation that ATL's correction is inappropriate. Rather than acknowledging ATL's logical proposal—which aligns with the specification by referring claim 15 back to claim 12—CosMX manufactures nonsensical alternatives to support its erroneous allegation that claim 13 should be the base claim. Because ATL's requested change is clear from the face of the patent, judicial correction is appropriate. In *Hoffer v. Microsoft Corp.*, for example, the Federal Circuit overturned a district court decision for refusing to correct a dependent claim that clearly referred to an incorrect base claim. 405 F.3d 1326 (Fed. Cir. 2005). This is because "[a]bsent evidence of culpability or intent to deceive by delaying formal correction, a patent should not be invalidated based on an obvious administrative error." *Id.* at 1331.

CosMX fills its responsive brief with unsupported attorney argument, attesting that claim 15 "might be corrected to claim a second 'cathode' with a different compaction density range in lieu of the currently recited 'anode.'" Dkt. 130 at p. 13. This argument is both untimely and meritless. Not only is this the first time CosMX has raised this theory, but the proposed correction flatly contradicts how a POSITA would read claim 15. As Dr. Horn explains in his declaration,

4

the '910 patent describes "the terms 'anode' and cathode'" as "different electrodes with different properties." Dkt. 118-5, ¶50. Based on these different properties (such as compaction density), a POSITA reading the '910 patent would have known that "claim 15 in the '910 Patent is not referring to the same electrode as claim 13." *Id.* This is evident from the specification of the '910 patent, which provides two entirely different compaction density ranges for a cathode (*i.e.,* 3.5 g/cm$^3$ – 4.3 g/cm$^3$) and an anode (*i.e.,* 1.2 g/cm$^3$ – 1.8 g/cm$^3$). '910 Patent at 22:1-10. These values are prescribed differently for the cathode and the anode in part due to the differences in materials used to manufacture each electrode. Dkt. 118-5, ¶ 50; *see also* '910 Patent at 23:27-47.

Thus, the fact that the prescribed compaction density range for the anode lines up precisely with what is claimed in claim 15 makes it clear to a POSITA what electrode claim 15 would be referring to. *Compare* '910 Patent at 22:1-10 *and* claim 15 (both claiming a compaction density range of 1.2 g/cm$^3$ – 1.8 g/cm$^3$ for the double sided coating (D2) of the anode). Attempting to line up this compaction density range with a second cathode would make no sense for a POSITA, and CosMX has not provided any expert support attesting to such. CosMX also cannot point to anything in the prosecution history of the patent that suggests applicants intended for this claim to refer back to claim 13 instead of claim 12. *Canatex Completion Sols., Inc. v. Wellmatics, LLC,* 159 F.4th 39, 49 (Fed. Cir. 2025) (holding that no aspect of the prosecution history suggested a different meaning or otherwise undermined the proposed correction). For these reasons, ATL's proposed construction and judicial correction should be adopted.

IV. **"The pores at least comprises a part of the inorganic particles" ('148, Cls. 1, 10)**

ATL's requested correction, changing the verb "comprises" to "comprise" to match the grammatical number of the subject "pores," is obvious, non-controversial, and a simple application of the basic grammar rule known as "subject-verb concord/agreement." Tellingly, CosMX offers no evidence to support its never-before-disclosed theory that the claim should instead be corrected

5

to read "each of the pores at least comprises a part of the inorganic particles." Dkt. 130 at 18. And this correction fails on the merits regardless of support, as it attempts to broaden the scope from the plural noun "pores" to the singular "each pore." Here again, CosMX's merely relies on attorney argument instead of proper support for how a POSITA would view this term. *See, e.g., Dasso Int'l, Inc. v. MOSO N. Am., Inc.,* No. 1:17-CV-01574-RGA, 2019 WL 2135855, at *2 (D. Del. May 16, 2019) (finding claim definite because alleged infringer, who relied solely on attorney argument, "fell far short of meeting their burden to prove, by clear and convincing evidence, that the '578 Patent fails to reasonably inform a POSA about the scope of the invention.") CosMX further alleges, for the first time in its responsive briefing and without citation, that claim 1 of the '148 patent is indefinite because it is "unclear—and unsolvable in the intrinsic record—whether it is enough that just a single pore, or even a pair of pores, contains inorganic particles or if more of 'the pores' are required." Dkt. 130, p. 16. But such a construction is inconsistent with the '148 patent's specification when viewed from the perspective of a POSITA.

To begin, at a fundamental level, a pore is just a void (*i.e.*, empty) space within a substance. Ex. L (The New Penguin Dictionary of Civil Engineering, 2005) at p. 3. Such space must necessarily have a boundary. As Dr. Horn explained, in the context of the claim language of the '148 patent, a POSITA would "reasonably understand there are two requirements for what comprises a pore: (1) it must be "formed by the binder," meaning that the outer perimeter of the pore's geometry (*i.e.*, the shape and boundaries of the pore wall) is defined by the binder itself; and (2) the pores must "comprise a part of the inorganic particles" meaning that some part of the inorganic particles must extend into the empty space of the pore." Dkt. 118-5, ¶54. In the context of claim 1 of the '148 patent, this means that (1) the outer wall of the pore is shaped by the binder (regardless of whether particles exist within the binder itself), and that at least some part of the

6

inorganic particles must be inside the empty space of the pores. *Id.* This, of course, may include a particle in its entirety. As Dr. Horn stated, a POSITA would understand, based on the context of the '148 patent, that the larger particles present in the binder necessarily must be present in the exposed space of the pores. *Id.*, ¶¶57-58. CosMX's claim that a POSITA would not know how to interpret this claim because it does not specify the exact amount of pores required to have particles within them is inconsistent with the law and a POSITA's reading of the plain language of this claim. *See Dasso,* 2019 WL 2135855 at *2 (granting the term "at least a part of" its plain and ordinary meaning where there is solely attorney argument alleging indefiniteness).

Ignoring the teachings of the specification and figures, CosMX proposes—for the first time in its responsive briefing—an alternative read to fit its invalidity arguments without any consideration of the teachings of the '148 patent. For instance, CosMX claims that Figure 1 of Beard would "show particles in all the pores" because it discloses pores within the binder walls, a clear violation of claim 1's teachings that the pore is "formed by the binder." Dkt. 130 at p. 20. CosMX attempts to include the binder and particles within the pore, even while admitting this interpretation fails to define "the objective metes and bounds of the pores" with reasonable certainty for a POSITA. *Id.* at pp. 20-21. Putting aside CosMX's inappropriate assertion of an invalidity argument in a claim construction brief, CosMX once again provides no substantive support for why a POSITA would read claim 1 in such a fashion. CosMX's failure to do so is fatal to its argument, and ATL's construction should be adopted. *See, e.g., Legacy Separators LLC v. Halliburton Energy Services Inc,* 2016 WL 3017140, *3-*4 (S.D. Tex. 2016) (finding term "partially vacate" was not indefinite in view of the examples in the specification showing what was meant by the term).

## V. "First Layer"/ "Second Layer" Terms ('118, Various Claims)

Departing from this term's plain meaning is unwarranted because CosMX fails to show that the specification or prosecution history clearly and unmistakably disavow the scope of the first layer's "first material" to an "active material." ***First***, CosMX conflates what an electrode *may* contain with what the claims *require*. The claims recite "a first layer comprising a first material"—not "a first active material layer." When intended to limit the first layer to active material, the patentee expressly recited "a first active material layer comprising a first active material" in a related patent (Ex. J at cl. 1; Ex. K at cl. 1) and specifically limited dependent claim 7 to certain enumerated active materials. '118 Patent at cl. 7. CosMX's contention, which was not previously disclosed, alleges that the claims somehow require an active material to be deposited ***directly on*** the current collector to function based on a statement made by ATL's IPR expert and is easily rejected. Dkt. 130 at p. 22 (citing Dkt. 130-5, ¶ 41). The claim language says the "first layer" is "formed on a surface of the current collector" without specifying whether it should be "directly" or "indirectly" on the surface, and CosMX has not asked for a narrowing construction that would preclude intervening layers. Moreover, Dr. Wheeler's statement refers to "Lithium Ion Batteries, ***Generally***," *i.e.*, the state of the art, not the '118 patent's claims. Dkt. 130-5, ¶ 41. Dr. Wheeler never says that active material must be deposited ***directly*** onto the current collector without any intervening layers or material.

***Second***, the specification does not disavow the scope of the claims. The "active layer" contemplated by the claims can have any number of layers so long as it also has the required first and second layers, and CosMX has not asked for a construction that would preclude additional layers. Accordingly, nothing in the claim language or specification precludes some portion of the multi-layer "active layer" from being comprised of "non-active" material, including the required "first layer."

8

*Third*, using the phrase "present application" is not equivalent to using "present invention." The term "present application" refers to the document itself (*i.e.,* the patent application filing), not to the claimed subject matter. This is a procedural reference, not a substantive characterization of the invention's scope. By contrast, the "present invention" purports to define the metes and bounds of what is being claimed. Tellingly, CosMX does not cite to any authority finding that a patentee's statements as to "the present application" merited disclaimer. Thus, CosMX's reliance on *Poly-America*, *SciMed Life Systems*, and *Honeywell* (RB 23-27) is misplaced. In all of these cases the specification defined "the present ***invention***." *Id.* Here, the '118 patent's specification only refers to "the present ***application***." *See, e.g.*, '118 Patent at 1:45-46, 2:58-60. Moreover, the '118 patent's specification uses qualifying language (*e.g.,* "in the examples," "according to some examples," etc.) when referring to "the present application." *See, e.g.*, '118 Patent at 1:45-51, 2:58-64, 4:32-40. Indeed, the specification expressly states, "The following examples … do not limit the present application in any way." *Id.*, 2:55-57; 7:37-41. Such qualifying language is inconsistent with the "exacting" standard for disavowal "requiring clear and unequivocal evidence," *Poly-America v. API Indus's*, 839 F.3d 1131, 1136 (Fed. Cir. 2016), and distinguishable from the clear definitional statements repeatedly made in CosMX's cited cases.

In contrast to *Poly-America*, *SciMed*, and *Honeywell*, the '118 specification's discussions concerning an active material-based first layer concern the preferred embodiment. *See* Dkt. 118, at pp. 21-22. It is irrelevant that the specification provides many examples of the preferred active material embodiment. *See Epass Tech. v. 3Com*, 343 F.3d 1364, 1365-66 (Fed. Cir. 2003) (specification's reference to a "card" over 280 times was only a preferred embodiment). Absent disclaimer, it is improper to import a limitation from the specification into the claims "even if all of the embodiments … included a specific limitation." *Cadence Pharm. v. Exela Pharm.*, 780 F.3d

9

1364, 1369 (Fed. Cir. 2015). Moreover, nothing in the specification limits the first layer from comprising an active material *and* a thin coating of non-active materials.

CosMX also conflates non-active materials with non-conductive/poorly conductive materials when it erroneously argues that the "first and second layers ***must*** be active material" because the '118 patent's specification allegedly "disparages using 'non-conductive or poorly-conductive material' as the first material." Dkt. 130 at pp. 24-25. But non-active materials do not necessarily have poor conductance and nothing in the specification suggests they do or that non-active materials cannot be used. Instead, the specification simply explains a benefit of active material-containing layers (high energy density) "when compared with" non-conductive/poorly conductive materials. '118 Patent at 4:18-31. A thin non-active material layer could also have good conductance depending on the materials used. To constitute disavowal, disparagement must be a "clear and unmistakable" rejection of alternatives. *Poly-America*, 839 F.3d at 1136. Stating that active materials have advantages over poorly conductive materials does not clearly disclaim non-active materials.

***Fourth***, there is no prosecution history disclaimer. ATL's statements, Ex. I, 5-6, and its expert's related statements, Dkt. 130-5, ¶¶ 46-52, concern a short summary of the '118 patent, including its preferred embodiment; these statements are not a stand-in for the entire specification or claims. *See* Dkt. 118 at pp. 23-24. In response, CosMX plays fast and loose with its quotations to misleadingly tie together two separate statements to give the false impression that ATL made definitional statements about the '118 patent's claims. Dkt. 130 at p. 26. ATL did not. *See* Ex. I at p. 5.

For substantially the same reasons, "a second layer comprising a second material" should also be construed according to its plain meaning.

10

| | |
|---|---|
| DATED: December 23, 2025 | /s/ *Michael D. Powell*<br>Michael D. Powell<br>California State Bar No. 202850<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>mikepowell@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>Telephone: (415) 875-6600<br>Facsimile: (415) 875-6700<br><br>Lance Yang<br>California State Bar No. 260705<br>**QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>lanceyang@quinnemanuel.com<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>Phone: (213) 443-3000<br>Fax: (213) 443-3100<br><br>G. Blake Thompson<br>State Bar No. 24042033<br>blake@TheMannFirm.com<br>MANN \| TINDEL \| THOMPSON<br>112 E. Line Street, Suite 304<br>Tyler, Texas 75702<br>Telephone: (903) 657-8540<br>Facsimile: (903) 657-6003<br><br>*Attorneys for Plaintiff Ningde Amperex Technology Limited* |

11

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served on December 23, 2025, with a copy of this document via the Court's electronic CM/ECF system.

December 23, 2025                    /s/ *Yunzhi Leon Lin*
                                     Yunzhi Leon Lin

12